**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARLON RUMPH, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 1:21-cv-77 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| MICHAEL CLARK, THE ATTORNEY | ) | |
| GENERAL OF THE STATE OF | ) | |
| PENNSYLVANIA, and | ) | |
| THE DISTRICT ATTORNEY OF | ) | |
| THE COUNTY OF VENANGO, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM**

Pending before the Court[1] is a Petition for a Writ of Habeas Corpus (ECF No. 7) filed by

Marlon Rumph ("Petitioner") under 28 U.S.C. § 2254. Petitioner challenges the judgment of

sentence imposed on him by the Court of Common Pleas of Venango County at criminal docket

number CP-61-CR-0000715-2014. For the reasons below, the Court will deny the petition and will

deny a certificate of appealability.

**I.      Relevant Background**

The facts underlying Petitioner's criminal convictions were summarized by the Superior

Court of Pennsylvania as follows:

> In 2014, the Franklin City Police Department, the Oil City Police Department, and
> the Office of the Attorney General of Pennsylvania conducted a joint drug
> investigation in Venango County. With the use of a confidential informant,
> investigators engaged in controlled buys of heroin from a residence in Venango
> County. A search warrant was obtained for the location, and police discovered
> heroin, drug-dealing paraphernalia, a firearm, and cash. A number of drug dealers
> were arrested, and they led investigators to [Petitioner] as the source of their heroin.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to
have a United States Magistrate Judge conduct proceedings in this case, including entry of a final
judgment.

> Police obtained a wiretap for [Petitioner's] telephone, and, during an intercept, [Petitioner] agreed to sell heroin to Christopher Carlson. Police were present when the drug transaction occurred on November 7, 2014, and arrested [Petitioner] and Carlson. [Petitioner] was charged with and convicted of the above-delineated four offenses.
>
> At [Petitioner's] trial, Christopher Carlson testified as follows. A relative arranged for him to meet [Petitioner], whom he knew as "Lucky," so that Carlson could begin selling heroin in the Franklin area. N.T. Trial, 11/17/15, at 156. In May 2014, [Petitioner] agreed to sell heroin to Carlson for $100 a gram, and Carlson would re-sell that substance for between $150 and $200 a gram. When he first started dealing, Carlson would purchase between twenty to thirty grams of heroin a week from [Petitioner]. Over the course of the six months that he dealt that substance, Carlson began to purchase about 100 grams a week from [Petitioner], who was Carlson's sole source for heroin. *Id.* at 159. Carlson, who was arrested in November 2014, was also aware that [Petitioner] sold heroin to other drug dealers.

(ECF No. 15-30 at 2-3.)

Petitioner was convicted at a jury trial of dealing in the proceeds of an unlawful activity, possession of a controlled substance with intent to deliver ("PWID"), conspiracy to commit PWID, and criminal use of a communication facility. On February 9, 2016, Petitioner was sentenced to an aggregate term of seventeen to fifty years' imprisonment.

Petitioner appealed, but the Superior Court of Pennsylvania affirmed the judgment of sentence on January 26, 2017. *Commonwealth v. Rumph*, 160 A.3d 268 (Pa. Super. 2017) (unpublished memorandum); (ECF No. 21-57).

On July 26, 2018, Petitioner filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. The PCRA court held an evidentiary hearing, and ultimately denied the petition. Petitioner filed an appeal from the denial. The Superior Court of Pennsylvania affirmed the denial of the PCRA petition on July 10, 2020. *Commonwealth v. Rumph*, 239 A.3d 64 (Pa. Super. 2020) (unpublished memorandum); (ECF No. 21-83). Petitioner filed a petition for allowance of appeal, but the Supreme Court of Pennsylvania denied it on January 5, 2021. *Commonwealth v. Rumph*, 664 A.3d 1 (Pa. 2021).

Petitioner placed the instant petition for writ of habeas corpus in the prison mailing system on February 12, 2021. (ECF No. 1 at 15.) Respondents subsequently filed an answer. (ECF No. 20.) The petition is ripe for review.

## II. Discussion

### A. Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. This statute permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

### B. Standard of Review

Habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted). It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017). There are other prerequisites that he must satisfy before he can receive habeas relief on his claims but, ultimately, Petitioner cannot receive federal habeas relief unless he shows that he is in custody in violation of his federal constitutional rights. 28 U.S.C. § 2254(a); *see, e.g.*, *Vickers*, 858 F.3d at 849.

Even if a constitutional error is found in a habeas case, the petitioner is not entitled to relief if the error was harmless. In habeas cases, the harmless error analysis is that which is set forth in

*Brecht v. Abrahamson*, 507 U.S. 619 (1993).[2] Under *Brecht*, an error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 638 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The *Brecht* harmless error analysis is not necessary when it is subsumed in the substantive constitutional test at issue, such as it is with an ineffective assistance of counsel claim. *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (the prejudice prong of an ineffective assistance claim and the *Brecht* harmless error are essentially the same standard).

A finding of fact made by a state court has always been afforded considerable deference in a federal habeas proceeding. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

As "to any claim that was adjudicated on the merits" by the Superior Court, a federal habeas court is prohibited from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court (here, the Superior Court) made a decision that

---

[2] In *Brown v. Davenport*, 142 S. Ct. 1510 (2022), the Supreme Court held that when a state court has ruled that an error was harmless, a federal habeas court must review that decision not only under *Brecht* but also under AEDPA's standard of review at § 2254(d).

finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.*, *Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

The majority of federal habeas claims need only be analyzed under § 2254(d)(1), which applies to questions of law and mixed questions of law and fact. In applying § 2254(d)(1), this Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1). It is "'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 280 (2016) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, this Court must determine whether the Superior Court's adjudication of the claim at issue was "contrary to" that law. *Williams*, 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have independent meaning). A state-court adjudication is "contrary to...clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Williams*, 529 U.S. at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives review under § 2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis*, 834 F.3d at 281 (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it "'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must prove that the Superior Court's decision "*was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*." *Richter*, 562 U.S. at 103 (emphasis added). As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer, supra*, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013).[3] "[A] state court decision is based on an 'unreasonable determination of the facts' if the

---

[3] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert*, 387 F.3d at 235. The Court of Appeals has instructed that § 2254(d)(2), when it applies, provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis*, 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

### C.    Petitioner's Claims

####    1.    Ground One: Sufficiency of the evidence

Petitioner first asserts that the Commonwealth failed to adduce sufficient evidence to support his conviction of PWID in excess of 1000 grams of heroin. (ECF No. 7 at 5.) Specifically, he asserts that the jury was permitted to speculate as to the amount of heroin in question. (*Id.*)

Petitioner raised this claim in his direct appeal. The Superior Court of Pennsylvania resolved it as follows:

> [Petitioner's] first allegation is that the evidence was insufficient to sustain a finding that he possessed in excess of 1,000 grams of heroin.
>
> > The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-

finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Scott*, 146 A.3d 775, 777 (Pa.Super. 2016).

[Petitioner's] position on appeal is solely that there was not enough evidence to support a finding that he sold in excess of 1,000 grams of heroin. He suggests that the evidence therefore was insufficient to support his conviction of PWID and conspiracy to commit PWID. However, the weight of the heroin that [Petitioner] sold is not an element of either PWID or conspiracy to commit PWID. Thus, [Petitioner's] position on appeal has no relation to the sufficiency of the evidence supporting his convictions. Our analysis follows.

The information accused [Petitioner] of committing a violation of 35 P.S. 780-113(30) and with conspiracy to commit 35 P.S. § 780-113(30). Under § 780-113 (30), the following is a prohibited act: "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 P.S. § 780-113(30). Thus, selling any amount of a controlled substance constitutes a violation of this provision. As noted, [Petitioner's] sufficiency argument on appeal pertains to the weight of the heroin that he sold. However, the weight of the drugs sold is irrelevant for purposes of obtaining a conviction under § 780-113(30), and, concomitantly, a conviction for conspiracy to commit a violation of § 780-113(30).

We note that the jury was properly charged on the elements of conspiracy and a violation of § 780-113(30). N.T. Trial, 11/19/15, at 357-361. The evidence was sufficient to establish that [Petitioner] committed the crimes in question. Mr. Carlson testified that he and [Petitioner] conspired to sell heroin in the Franklin area from May to November 2014.

Additionally, the amount of heroin that [Petitioner] sold did not affect the maximum sentence that [Petitioner] faced. Under 35 P.S. § 780-113(f)(1), any person who violates § 780-113(30) "with respect to a controlled substance . . . classified in Schedule I or II which is a narcotic drug, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding fifteen years." 35 P.S.

§ 780-113(f)(1) (footnote omitted). Heroin is a Schedule I controlled substance that is narcotic. 35 P.S. § 780-104(1)(ii)(10); *Commonwealth v. Waddell*, 61 A.3d 196, 207 (Pa.Super. 2012). Therefore, the amount of heroin that [Petitioner] sold did not increase his maximum sentence, which was set due to the nature of the controlled substance that he delivered. Since the weight of the heroin involved herein did not increase the maximum penalty that [Petitioner] faced, that fact did not become an element of the crimes under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Therein, the Supreme Court ruled that, under the Sixth Amendment, any fact, other than a prior conviction, that increases a defendant's maximum sentence is an element of the crime and must be submitted to a jury and proven beyond a reasonable doubt.

After being properly instructed on the elements of the crimes of conspiracy and PWID, the jury was then given a special interrogatory. It was told that **if** Appellant was found guilty of either conspiracy to commit § 780-113(30) or of § 780-113(30), then it was to determine how many grams of heroin were sold. *Id.* at 369 ("If you find the Defendant guilty on Count 2 or Count 3[, t]he additional question is, "And we further find that the amount of heroin was . . . ."). The jury was given the option of concluding that [Petitioner] sold more a than 1,000 grams of heroin, at least 100 but less than 1,000 grams, between fifty and 100 grams, not less than ten nor more than fifty grams, and between one and ten grams. *Id.* at 369-370. The jury returned a finding that [Petitioner] sold more than 1,000 grams of heroin, and it is this finding that [Petitioner] challenges on appeal. However, this determination, as analyzed above, had no bearing on the elements of the conspiracy and § 780-113(30) offenses. Rather, the finding as to the weight of the drugs impacted on the offense gravity score that was assigned to the two offenses. 204 Pa.Code § 303.15 (providing increased offense gravity scores as weight of drugs increases for purposes of PWID, and assigning an offense gravity score of thirteen when the weight of heroin in a PWID case exceeds 1,000 grams). The sentencing transcript confirms that the jury was given this special interrogatory for purposes of determining the offense gravity score. At the sentencing hearing, the sentencing guidelines were placed on the record. On the second count, conspiracy to commit PWID, it was delineated that "because the jury found more than a thousand grams, that gives offense gravity score 13[.]" N.T. Sentencing, 2/9/16, at 3. For count three, the violation of § 780-113(30), the same was outlined. *Id.*

Thus, [Petitioner's] first argument on appeal does not relate to the sufficiency of the evidence. Instead, [Petitioner's] first issue on appeal pertains to the discretionary aspects of his sentence because it concerns the calculation of the offense gravity score for the PWID and conspiracy crimes. *See Commonwealth v. Lamonda*, 52 A.3d 365 (Pa.Super. 2012) (explaining that a sentencing court's application of an allegedly incorrect offense gravity score challenges the discretionary aspects of sentencing). Additionally, sentencing enhancements increasing a recommended sentence under the sentencing guidelines, as opposed to facts triggering an increase in the maximum or minimum sentence, are not elements of the crimes in Pennsylvania because a court is not required to sentence within the

recommended ranges. *Commonwealth v. Wilson*, 829 A.2d 1194, 1201-02 (Pa.Super. 2003).

(ECF No. 21-57 at 3-8) (emphasis in original) (footnotes omitted).

In *Jackson v. Virginia*, 443 U.S. 307, 309 (1979), the Supreme Court explained that "[t]he Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt" of each element of the offense. As the Superior Court correctly held, Petitioner's claim does not involve an element of the offense. The amount of heroin involved was relevant only to the discretionary aspects of his sentence. This claim, at best, raises a challenge to the state court's sentencing procedure and thus constitutes a state law claim which is not cognizable in a federal habeas proceeding. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984); *Estelle*, 502 U.S. at 67-68.

Accordingly, Petitioner is not entitled to habeas relief on this ground.

2.    Ground Two:  Ineffective assistance of trial counsel

Petitioner next asserts that his trial counsel was ineffective for failing to challenge the verdict sheet on which the jury was permitted to determine the weight of the heroin involved when the parties had stipulated to the weight. (ECF No. 7 at 7.) Petitioner raised this issue in his PCRA petition. In his PCRA appeal, after setting forth the appropriate standard for reviewing a claim of ineffective assistance of counsel, the Superior Court adopted the PCRA court's opinion in disposing of this claim. (ECF No. 21-83 at 4-5, 6-7.) The PCRA court held as follows:

> [Petitioner] argues that [trial counsel] was ineffective in failing to object to [Petitioner] being sentenced to distributing over 1,000 grams of heroin where the parties had previously stipulated to the amount. This argument lacks merit because it misinterprets the stipulation that was made. The disputed stipulation was discussed at length:
>
>> [The Commonwealth]: Your Honor, on the verdict slip, and I considered this last night, and as I said in my argument to you on the judgment of acquittal,

10

we don't know how much was actually taken during that period of six months, but we do know how much was found at Carlson's house on the last attempt. So on Count 3 I'm comfortable saying 2 to 10 grams, because that's what the lab report was from Office Gindhart for the amount found on that day.

The real range, in my opinion, goes to the conspiracy, because the conspiracy was six months in length. We do have testimony from Mr. Carlson as to the amounts he was getting and what the ultimate amount he figured was for the whole conspiracy.

THE COURT: Right. And that's - that's where, I think, all of the different numbers would be listed.

I agree that's probably the - where the testimony is and what the jury can consider. I'm just trying to think of how to do that on the - not the conspiracy, but the delivery.

[The Commonwealth]: Your honor, might I make a suggestion. The actual lab report that came in from Officer Gindhart gave the specific amount that was found. So I would have no problem with the Court advising the jury this is the amount the lab report found. That is within the range of 2 to 10 grams.

THE COURT: It was 7?

[Trial counsel]: 7 grams.

[The Commonwealth]: it was 7-point-something grams.

THE COURT: 7-point-something.

[The Commonwealth]: Obviously, it was between 2 to 10 grams. And I have no problem with the direction given to the jury that, on that count, the range in this case testified to by Officer Gindhart and proven by the lab was -

THE COURT: I'm assuming you don't object if I direct the jury to the idea that count is -

[Trial Counsel]: No.

THE COURT: You still take the position that we shouldn't[] have the amounts?

[Trial Counsel]: We're all over the boards with this. I mean, as the agent testified, initially he told him he was bringing him down daily 30 grams. Then he changed it during the trial - actually, during the preliminary hearing 30 to

11

50 grams later on, every three or four days, and he was like that happ[e]ned in the last month. Where in the beginning it was only 5 to 10 grams. So you're asking the jury to speculate when there's no evidence other than this guy who's given out different numbers at different times.

[The Commonwealth]: That speculation is simply argument on credibility, Your Honor. I understand that. Whether or not it's speculation or whether or not there's sufficient evidence there from which a jury can take inference from and find as a fact is really our argument, and I think the jury is wide open to find any facts they want to in this case as to what the amounts were based on the evidence or lack thereof.

[Trial Counsel]: It's going to be based on the evidence.

THE COURT: I agree. I think you, obviously, get to argue to the jury, you know, about - exactly what you just said. It's numbers and what the testimony was and how credible can it be.

And generally I would agree that you're asking the jury to somewhat guess; however, the question as posed to Mr. Carlson was very specific to one point about the numbers and the total and asked - he was asked point bla[n]k about, you know, being comfortable with saying that it was over 1,000 grams, and that's kind of our max threshold and he said, yes. So, you know, we do have testimony on that fact. That it was in excess of 1,000 grams over that period of time.

So I - there is evidence for the jury to consider it. Obviously you have that argument that he's made a lot of statements -

*T.T. 11/19/15*, 302:24-25, 303:1-25, 304:1-25, 305:1-22. Contrary to [Petitioner's] argument, the Commonwealth stipulated to the amount of heroin found and tested, and the stipulation did not prevent the jury from relying on other testimony and evidence to find [Petitioner] had distributed more than that amount. This argument does not accurately contemplate the stipulation that was made during the trial, therefore, [Petitioner's] argument does not have merit. Moreover, [trial counsel] made objections and advocated for [Petitioner's] interest in the matter.

(ECF No. 21-69 at 17-19.)

Petitioner baldly asserts that the state court's decision was unreasonable under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). (ECF No. 7 at 7.) To prevail on a claim of ineffective assistance under *Strickland*, a petitioner has the burden of establishing that "counsel's representation fell below an objective standard of

12

reasonableness." 466 U.S. at 688. *Strickland* also requires that the petitioner demonstrate that he was prejudiced by his trial counsel's alleged deficient performance. This places the burden on the petitioner to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial "would have been different." *Strickland*, 466 U.S. at 694.

Pennsylvania courts typically articulate *Strickland*'s standard in three parts, while federal courts set it out in two. The legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. *See, e.g. Commonwealth. v. Mitchell*, 105 A.3d 1257, 1266 (Pa. 2014) ("this Court has divided [*Strickland*'s] performance component into sub-parts dealing with arguable merit and reasonable strategy. Appellant must, therefore, show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and Appellant suffered prejudice as a result."); *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117-18 (Pa. 2012) ("In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in Strickland[.]").

In this case, both the PCRA court and the Superior Court properly applied the *Strickland* standard and found that Petitioner's claim failed because the trial record reflected that it was without merit. Petitioner offers nothing to show otherwise. He is not entitled to habeas relief on this claim.

## III.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from … the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that

"[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Applying those standards here, jurists of reason would not find it debatable whether Petitioner's claims should be denied for the reasons given herein. Thus, a certificate of appealability will be denied with respect to his claims.

## IV.    Conclusion

For these reasons, the Court will deny the petition and will deny a certificate of appealability.

An appropriate Order follows.

Dated: February 24, 2025                          /s/ Patricia L. Dodge
                                                  PATRICIA L. DODGE
                                                  United States Magistrate Judge